UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CHARLES LEE EDKINS, | ) | CASE NO. 4:10 CV 58 |
| | ) | |
| Petitioner, | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J. T. SHARTLE, | ) | |
| | ) | |
| Respondent. | ) | |

  On January 12, 2010, Petitioner <u>pro se</u> Charles Lee Edkins filed the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. Petitioner, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio, asserts he has not received the individualized assessment required by the Second Chance Act of 2008, and seeks release to a halfway house.

  Petitioner was sentenced on December 15, 2008 to serve 48 months imprisonment in the United States District Court for the Western District of Michigan for Income Tax Evasion. <u>United States v. Edkins</u>, No. 1:05 CR 151 (W.D. Mich. 2005).

  Mr. Edkins alleges he filed a Request for Administrative Remedy on September 27, 2009, "indicating that he had been told by Case Manager Hayes that he would not receive consideration for a twelve-month halfway house placement but instead would receive 150-180 days

and the Region 'was not approving any more than 6 months.'" Petition, p.3. The Request was denied on October 5, 2009, on the ground that "'[t]he Unit Team has determined that 6 months CCC placement is of sufficient duration to provide the greatest likelihood of successful reintegration into the community.'" Petition, p.4. His appeal of this decision was also denied in an October 16, 2009 decision, "citing a substantial investigation into Petitioner's request, including application [of] the BOP's Program Statement 7310.04, but after 'careful review,' [and] recommend[ing] a 150-180 day CCC placement." Petition, p.4.

Petitioner appears to argue he is entitled to 12 months placement in a C.C.C. under the Second Chance Act. He asserts:

> [T]he BOP has apparently maintained adherence to its pre-Second Chance Act standard of limiting community corrections to six months, has not utilized home detention to accelerate participation in community corrections by beginning the transfer to halfway house earlier followed by up to six months of home detention.

Petition, p.6. He claims the denial of his request for 12 months placement in a C.C.C. "deprives him of rights conferred under the Second Chance Act, as well as the Equal Protection and Due Process Clauses of the Fifth Amendment." Petition, pp.6-7.

This matter is before the court for screening. 28 U.S.C. § 2243; Harper v. Thoms, No. 02-5520 2002, WL 31388736, at *1 (6th Cir. Oct. 22, 2002). At this stage, allegations in the petition are taken as true and liberally construed in petitioner's favor. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir.2001). As Mr. Edkins is appearing pro se, his petition is held to less stringent standards than those drafted by attorneys. Burton v. Jones, 321 F.3d 569, 573 (6th Cir.2003); Hahn v. Star Bank, 190 F.3d 708, 715 (6th Cir.1999). For the reasons set forth below, this action is dismissed.

The BOP's authority to designate where federal prisoners are confined is essentially based on two statutes. The first, 18 U.S.C. § 3621(b), states:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence-
>   (A) concerning the purposes for which the sentence to imprisonment w a s determined to be warranted; or
>   (B) recommending a type of penal or correctional facility as a appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b). The second relevant statute, 18 U.S.C. § 3624(c), charges the BOP with facilitating a prisoner's reentry into society. It states, in relevant part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

3

Before December 2002, the BOP allowed prisoners to be placed "'in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate." Levine v. Apker, 455 F.3d 71, 75 (2d Cir.2006) (quoting U.S. Dept. of Justice, Federal Bureau of Prisons Program Statement 7310.04 (Dec. 16, 1998)). In December 2002, the Department of Justice Office of Legal Counsel issued a memorandum announcing a "significant procedure change" in the BOP's policy of placing offenders in C.C.C.s for all or a significant portion of their sentences. United States v. Sherpa, 251 F. Supp.2d 988, 990 (D. Mass. 2003) (internal quotation omitted).

The 2002 memorandum concluded that § 3621 did not confer general authority on the BOP to place an offender in a C.C.C. at any time or for any period of time. Instead, the memorandum concluded the BOP's authority to place an offender in community confinement derived solely from § 3624(c), which limits the time an offender may be placed in a C.C.C. to the lesser of six months or ten percent of the offender's sentence. See Woodall v. Bureau of Prisons, 432 F.3d 235, 240 (3d Cir.2005).

The BOP adopted a new policy on December 20, 2002 to reflect the Office of Legal Counsel's position limiting an inmate's release to community confinement for the last ten percent of his or her term of imprisonment or six months, whichever is shorter. See id. This policy prompted prisoner lawsuits challenging its validity. The First and Eighth Circuit Courts of Appeals found the 2002 policy unlawful because it limited the BOP's discretion to transfer offenders to a C.C.C., thus restricting transfer only to the last 10 % of an offender's sentence or six months and contradicting the plain meaning of § 3621(b), which grants general authority to the BOP to transfer prisoners at any time during their term of incarceration after an individualized determination of the appropriateness of a transfer based upon certain enumerated factors. Elwood v. Jeter, 386 F.3d 842

4

(8th Cir.2004); Goldings v. Winn, 383 F.3d 17 (1st Cir.2004).

The BOP responded to these decisions by adopting a new set of rules regulating C.C.C. placement, effective February 14, 2005. The regulations, 28 C.F.R. §§ 570.20 and 570.21, were announced as a "categorical exercise of discretion [by the BOP] for designating inmates to community confinement." 28 C.F.R. § 570.20. The regulations denied C.C.C. placement to any inmate not in the lesser of the last 10 % or six months of his sentence, except under certain limited, enumerated circumstances:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority for example, residential substance abuse treatment program (18 U.S.C. § 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(c)).

28 C.F.R. §§ 570.21. Several decisions in this circuit found that this new BOP policy of excluding placement in community confinement until the last 10 percent or six months of a prisoner's sentence was contrary to congressional intent and that the BOP must apply the factors in 18 U.S.C. § 3621(b) when considering C.C.C. placement. See Luckett v. Eichenlaub, No. 07-10118, 2007 WL 3124666 (E.D. Mich. Oct.24, 2007); Halter v. Eichenlaub, No. 2:07-CV-11072, 2007 WL 2873944 (E.D. Mich. Sept. 25, 2007); Weirup v. Eichenlaub, No. 2:07-10672, 2007 WL 2300715 (E.D. Mich. Aug.7, 2007); Holloway v. Marberry, No. 2:06-12516, 2007 WL 1880386 (E.D. Mich. June 27, 2007).

In the midst of these challenges, Congress amended 18 U.S.C. § 3624(c)(1) through

the Second Chance Act of 2007 ("the Act"), 42 U.S.C. § 17501, which was enacted on April 9, 2008. The Act amended § 3624(c)(1) to provide: "the BOP Director shall ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second Chance Act, Pub. L. 110-199, § 251, 122 Stat. 660, 692 (2008).

In accordance with the Act, the BOP issued an interim policy memorandum on April 14, 2008 to address RRC placement considerations. The memorandum states the "categorical timeframe limitations on prerelease community confinement" found in 28 C.F.R. §§ 570.20 and 570.21 "are no longer applicable and must no longer be followed." The memorandum further requires that RRC placement decisions be made on an individual basis with reference to the five-factor criteria set out in section 3621(b). Inmates previously denied RRC placement were to be reconsidered under the standards set out in the memorandum. See Montes v. Sanders, 2008 WL 2844494, at *1 (C.D.Cal. July 22, 2008);see also Miller v. Whitehead, 527 F.3d 752, 755 (8th Cir.2008) ("In reaction to this statute, and the new 12-month maximum placement, the BOP issued guidance directing that 'inmates must now be reviewed for pre-release RRC placements 17-19 months before their projected release dates.' ")

The BOP's interim policy memorandum on C.C.C. placement consideration requires that C.C.C. placement decisions be made on an individual basis with reference to the five-factor criteria set out in 18 U.S.C. § 3621(b), which provides as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets

> minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
> > (1) the resources of the facility contemplated;
> > (2) the nature and circumstances of the offense;
> > (3) the history and characteristics of the prisoner;
> > (4) any statement by the court that imposed the sentence--
> > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > (B) recommending a type of penal or correctional facility as appropriate; and
> > (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Therefore, before a prisoner is even considered eligible for transfer, the BOP must consider the factors set forth in 18 U.S.C. § 3621(b).

Here, petitioner claims he was "told" by a case manager that "the Region was not approving any more than 6 months." None of the responses to his appeals indicated such a policy, however. Moreover, there is no BOP policy in place that categorically limits a prisoner's placement in a C.C.C.

Mr. Edkins received the consideration to which he is entitled. In the response to his administrative appeal, the BOP explained that there was a "substantial investigation into Petitioner's request, including application [of] the BOP's Program Statement 7310.04, but after 'careful review' ... 180-day C.C.C. placement [was recommended]."[1] This certainly does not suggest a categorical

---

[1] The Program Statement provides, in part:

> A number of factors must be weighed to determine the length of CCC placement for inmates, including their individual needs and existing community resources. Ordinarily, inmates with shorter sentences do not require maximum CCC placement due to reduced

denial of his request based on any existing policy.

Finally, to the extent petitioner argues his constitutional rights are being violated because respondents decided not to allow him 12 months in a C.C.C., he has no right to serve his sentence in a particular facility. Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner." 18 U.S.C. § 3621; Moody v. Daggett, 429 U.S. 78, 88 (1976); Beard v. Livesay, 798 F.2d 874 (6th Cir.1986). There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

s/ Kathleen M. O'Malley
KATHLEEN M. O'MALLEY
UNITED STATES DISTRICT JUDGE

DATED: November 10, 2010

---

transition needs. Additionally, inmates who are required to spend a portion of time in a CCC as a condition of release (i.e. supervised release or court order) do not require an extended Bureau CCC placement

BOP Program Statement 7310.04.